Mark Mausert
NV Bar No. 2398
Sean McDowell, Esq.
NV Bar No. 15962
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
sean@markmausertlaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| CARINA DANIELSON, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| TESLA, INC., | |
| Defendant. | |

COMES NOW Plaintiff, through counsel, and hereby complains of Defendant, Tesla, Inc. (hereinafter "Defendant"), via this Complaint and Jury Demand as follows:

<u>Jurisdiction, Venue & Jury Demand</u>

1.  Plaintiff is a woman and is a resident of northern Nevada. All, or almost all, acts, statements, communications, and omissions alleged herein occurred in northern Nevada, i.e., in or about Storey County, Nevada. Plaintiff hereby requests a jury trial relative to all issues so triable. Plaintiff has obtained a Notice of Right to Sue from the Equal Employment Opportunity Commission, dated November 08, 2024, i.e., Plaintiff has exhausted administrative remedies in accord with federal law. This Complaint and Jury Demand is timely filed in accordance with the Notice of Right to Sue which accompanies this Complaint and Jury Demand and is incorporated

herein.

2.   Defendant is a limited liability company, corporation, partnership, or some other legal entity which employed Plaintiff from approximately July 24, 2023, until approximately December 14, 2023, at which time Plaintiff's employment was terminated by Defendant. At all relevant times Defendant employed at least fifteen (15) employees for at least twenty weeks per year. Defendant maintains a business operation in Storey County, Nevada, where Plaintiff was previously employed.

3.   This Court has venue over this action because all, or almost all, acts, communications, statements, and omissions alleged herein occurred in northern Nevada; Defendant does substantial business in northern Nevada, e.g., it maintains a place of business in Storey County, Nevada, at which all, or almost all, acts, statements, and omissions which form the basis for this lawsuit occurred. Therefore, this Court has venue pursuant to 42 U.S.C. § 2000e-5(f)(3).

4.   This Court has jurisdiction over this matter as plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, i.e., 42 U.S.C. § 2000e, et seq. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1343. Jurisdiction exists because Plaintiff is a woman who alleges she was subject to gender/sex-based harassment; and was terminated in violation of Title VII. Plaintiff alleges she was harassed "because of sex" as defined by Title 42, and that she was subject to retaliation in violation of Title VII, i.e., termination of her employment in response to Plaintiff's complaints of sexual harassment. Plaintiff was qualified for her position and performed her job satisfactorily until she was discharged on or about December 14, 2023.

First Cause of Action

(Title VII Sexual Harassment/Sexually Hostile Work Environment)

5.   Plaintiff hereby incorporates all allegations of paragraphs 1 through 4, inclusive, as well

COMPLAINT AND JURY DEMAND - 2

1

as all other paragraphs herein, as though the same were fully stated.

2

3

6.    Beginning almost immediately upon being hired, in or about July 24, 2023, until her

discharge, on or about December 14, 2023, Plaintiff was stalked, harassed, and sexually harassed

4

by her coworker John Comp. Mr. Comp would follow Plaintiff around the workplace, make

5

inappropriate comments about her body, such as saying, "you're a pretty, small thing", he would

6

say "you're a woman, you have a nice…" and make a gesture to her body with his hands. Mr.

7

8

Comp would further repeatedly ask Plaintiff to go on dates, physically touch Plaintiff on her

9

shoulders, physically lean on her, and make it clear to Plaintiff exactly how much taller and

10

stronger Mr. Comp was than her.

11

7.    Plaintiff began complaining to Defendant about Mr. Comp's conduct beginning in or

12

about August of 2023. Plaintiff complained multiple times to supervisors, Malory (Last Name

13

Unknown), Kamryon Park, and Brandon Bell. Plaintiff further complained to Kimberly

14

Rakestraw and Kati Ferrell in Defendant's Human Resources department. Despite her many

15

complaints, Defendant took no action to remove Mr. Comp from Plaintiff's work environment.

16

On one occasion during one of Plaintiff's numerous complaints, Plaintiff was told that she was

17

18

paired with Mr. Comp and that she was to "look out for him".

19

8.    On or about December 8, 2023, at approximately 11pm, while working in the cell storage

20

area of the warehouse (commonly referred to as the "Panasonic Side"), Mr. Comp was

21

attempting to operate an electric power jack which had been damaged and rendered dangerous to

22

operate. Plaintiff told Mr. Comp to not use the equipment because it was damaged. Mr. Comp

23

24

ignored Plaintiff and proceeded to use the equipment, causing Plaintiff to engage the "emergency

25

stop" on the piece of equipment. When Plaintiff engaged the "emergency stop", Mr. Comp put

26

both of his hands together and slammed them on top of Plaintiff's hand that engaged the

27

COMPLAINT AND JURY DEMAND - 3

28

"emergency stop". Mr. Comp then forcefully shoved Plaintiff into a pallet full of batteries. Plaintiff then called Kamryon Park and reported the assault. Plaintiff further requested security be involved. Mr. Park responded by forcing Plaintiff to go on break. About an hour after she complained, Plaintiff was brought down to Defendant's security office wherein she was interviewed regarding the assault. After speaking with Defendant's security personnel, Plaintiff was placed on administrative leave, and she had her personnel badge removed from her possession. Despite being the victim of workplace violence, Plaintiff was discharged pursuant to Defendant's "Zero Tolerance for Violence in the Workplace" policy. At the time of the assault, and subsequent termination, Defendant was on notice that Plaintiff was pregnant.

9.    Plaintiff was employed by Defendant in a non-managerial position. Any supervisory tasks and/or authority which Plaintiff may have had or exercised were fairly insignificant. That is, Plaintiff was not designated as a "Manager" or functions as such during her employment. Throughout much, or all, of Plaintiff's tenure, she was subject to sexual and/or gender harassment "because of sex", as prohibited by 42 U.S.C. § 2000e, et seq. Plaintiff's work environment was rendered hostile and offensive by repeated and prolonged exposure to sexually foul and abusive music, i.e., "hiphop" or "rap" music. The content of the music which Defendant routinely allowed to be loudly played was incredibly foul and offensive. For instance, women were routinely referred to as "hoes" (slang for "whore"), bitches, and "c__ts". The songs contained extraordinarily graphic and sexually foul content. Defendant permitted employees and managers to routinely and loudly play this type of music in its work environment. Defendant's employees and managers would use "Bluetooth" speakers to stream music from their personal devices. The music of which Plaintiff complains did not customarily, or ever, emanate from radio stations regulated by the Federal Communications Commission (FCC). "Smack a Bitch" by

COMPLAINT AND JURY DEMAND - 4

Rico Nasty, and "She" by Tyler the Creator, are two examples of songs Defendant allowed to be broadcast in its work environment.

10. Defendant received notice on a daily, or near daily basis, of the fact misogynistic and/or sexually offensive music was being openly played in its work environment. Defendant received such notice by virtue of the music itself. That is, on a regular basis, Defendant had a number of managers present in the subject workplace, and those managers, including high-level managers, could hear the lyrics of the music, or would play the music themselves. That is, Defendant's managers knew, and had to have known, songs with obscene and otherwise very sexually offensive and misogynistic lyrics were being loudly and frequently broadcast in Defendant's work environment. By allowing obscene music to be routinely and frequently broadcast, Defendant guaranteed its work environment would be offensive "because of sex", especially the average hypothetical reasonable woman, and relative to most of its women employees. Plaintiff herself was offended by the music. Defendant disseminated a written policy and made various formulaic statements which purported to prohibit its employees from sexual harassment and/or sexual hostility such as sexually offensive music, but nonetheless routinely allowed conduct to occur which directly flouted its written and verbal promises to employees, to the effect they would be protected from sexual hostility. Defendant failed to take meaningful and consistent action to halt the music and otherwise fulfill its promise of a work environment free of sexual hostility. Part and parcel of the hostility Plaintiff experienced was Defendant's repeated and protracted refusals to investigate and remedy the playing of sexually offensive music in its work environment. Any diminution in Plaintiff's work performance was in response to the sexually hostile work environment Plaintiff was subjected to as described herein, and not a legitimate cause for discipline.

COMPLAINT AND JURY DEMAND - 5

11. As a direct and proximate result of being subject to a sexually hostile work environment, Plaintiff suffered emotional distress, loss of enjoyment of life, fear, anger, humiliation, loss of sleep and anxiety. It has been necessary for Plaintiff to incur costs and retain counsel to attempt to vindicate her right to a workplace free from sexual hostility, gender-based hostility, and retaliatory hostility.

<u>Second Cause of Action</u>

(Retaliation)

12. Plaintiff hereby incorporates all allegations of paragraphs 1 through 12, inclusive, as well as all other paragraphs herein, as though the same were fully stated.

13. On or about December 8, 2023, Mr. Comp's sexual harassment of Plaintiff turned physical to the point where Plaintiff felt it necessary for Defendant's security department to become involved to protect her from Mr. Comp as Defendant had not taken remedial or protective action pursuant to Plaintiff's numerous previous complaints. Defendant responded on or about December 8th, 2023, by forcing Plaintiff to leave the worksite, and remove her personnel badge from her possession. On or about December 14, 2023, Defendant informed Plaintiff she was being terminated pursuant to Defendant's "Zero Tolerance for Violence in the Workplace" policy.

14. The discharge/termination of Plaintiff's employment constituted retaliation as prohibited by Title VII of the Civil Rights Act of 1964, i.e., 42 U.S.C. § 2000e et seq.

15. As a direct and proximate result of being subject to retaliation, Plaintiff was injured and damages as described herein, has lost wages/income, and has been compelled to incur costs and retain counsel.

WHEREFORE, Plaintiff requests the following relief:

COMPLAINT AND JURY DEMAND - 6

1. For an award of compensatory damages;

2. For an award of punitive damages sufficient to punish and deter Defendant from engaging in similar conduct;

3. For an award of special or actual economic damages according to proof;

4. For an award of costs and reasonable attorneys' fees;

5. For injunctive relief to compel Defendant to adopt and actually enforce a reasonable policy against sexual harassment and/or discrimination; and

6. For any further relief the Court or Jury may deem just.

DATED this 5th day of February, 2025.

_/s/ Sean McDowell_
Mark Mausert
Sean McDowell
LAW OFFICE OF MARK MAUSERT
729 Evans Avenue
Reno, Nevada 89512

*Attorneys for Plaintiffs*

COMPLAINT AND JURY DEMAND - 7

## <u>INDEX OF EXHIBITS</u>

November 8, 2024 EEOC Issued Notice of Right to Sue…………………………..…….Exhibit 1

COMPLAINT AND JURY DEMAND - 8